**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MICHAEL SCHIFANELLI,

       *Plaintiff*,

   v.

JOHN LOVEDAY,

       *Defendant*.

Civil Action No. 25 - 2046 (LLA)

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Schifanelli, proceeding pro se, brings this action against Metropolitan Police Department ("MPD") Sergeant John Loveday under 42 U.S.C. § 1983, alleging that Sergeant Loveday violated the Fourth Amendment by unlawfully extending a traffic stop without reasonable suspicion of any criminal activity. ECF No. 7. Sergeant Loveday has moved to dismiss for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5) and for failure to state a claim under Rule 12(b)(6). ECF No. 12. For the reasons explained below, the court denies the Rule 12(b)(5) motion as moot and denies the Rule 12(b)(6) motion on the merits.

### I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following factual allegations from Mr. Schifanelli's amended complaint, ECF No. 7, and oppositions to Sergeant Loveday's motion to dismiss, ECF Nos. 19, 21, are accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 151-52 (D.C. Cir. 2015) (per curiam). On April 13, 2022, Mr. Schifanelli was driving on California Street, NW, in the District of Columbia when MPD Officer Nicole Koenigsmann conducted a traffic stop based on Mr. Schifanelli's failure to use a turn signal, ECF No. 7, at 1,

although no "such infraction [had] occur[red]," ECF No. 19, at 1.[1]  Two posterboard signs were attached to Mr. Schifanelli's car—one written in English on the rear of the vehicle and one written in Russian on the side—"communicating [his] perspective" about the "present conflict" between Russia and Ukraine.  ECF No. 7, at 1.  The signs read: "U.S. finally provokes Russia into self-defense by U.S./N.A.T.O. hovering on Russia's doorstep as a constant, troublesome and inescapable threat to Russia.  U.S. (gov) cause of war."  ECF No. 19, at 2.

Twenty minutes after Officer Koenigsmann initiated the stop, Sergeant Loveday arrived. ECF No. 7, at 2.  Sergeant Loveday questioned Mr. Schifanelli about the signs, *id.*, and he responded that "Russia is acting in self-defense to the U.S. presence in . . . Ukraine," ECF No. 19, at 3.  Sergeant Loveday told Mr. Schifanelli to wait until the U.S. Secret Service arrived.  ECF No. 7,  at 2; *see* ECF No. 19, at 3; ECF No. 22, at 5 (conceding that Sergeant Loveday "summon[ed] the assistance of the Secret Service").  About fifteen to twenty minutes later, the Secret Service arrived and an officer questioned Mr. Schifanelli about the signs.  ECF No. 7, at 2. Sergeant Loveday conferred with the Secret Service for another thirty minutes.  *Id.*  The Secret Service officer who had questioned Mr. Schifanelli then told Mr. Schifanelli that his detention was warranted because of "heightened security" concerning the war in Ukraine but that he was free to leave.  *Id.*  The traffic stop lasted at least one hour "or even substantially longer."  *Id.*

In October 2022, Mr. Schifanelli filed an action against Sergeant Loveday and Officer Koenigsmann in the Superior Court of the District of Columbia.  ECF No. 1-2, at 56; *see* Statement of Claim, *Schifanelli v. Loveday*, No. 2022-SC3-1469 (D.C. Super. Ct. Oct. 19, 2022). He later moved to voluntarily dismiss the case without prejudice.  Mot. to Dismiss, *Schifanelli*,

---

[1] When citing ECF Nos. 1-2, 7, 7-2, 19, and 21, the court refers to the CM/ECF-generated numbers at the top of each page rather than any internal pagination.

No. 2022-SC3-1469 (D.C. Super. Ct. Mar. 31, 2023); *see* ECF No. 1-2, at 56.  In March 2025, Mr. Schifanelli re-filed his case against Sergeant Loveday and Officer Koenigsmann in Superior Court.  ECF No. 1-2, at 56; *see* Statement of Claim, *Schifanelli v. Loveday*, No. 2025-SCB-422 (D.C. Super. Ct. Mar. 7, 2025).  In June 2025, the Office of the Attorney General for the District of Columbia ("OAG"), which represents Sergeant Loveday, removed the case to this court.  ECF No. 1.

Mr. Schifanelli then filed an amended complaint, which named Sergeant Loveday as the sole Defendant.  ECF No. 7; *see* ECF No. 8, at 1 (explaining that he intended to dismiss Officer Koenigsmann from the case because "she played only a minor role in the incident").  In his amended complaint, Mr. Schifanelli alleges that "there was no reasonable suspicion or probable cause from the initiation of the [traffic] stop to its completion" and that the stop was unlawfully extended "beyond [one involving] a turn-signal infraction" and the "time that would have been needed to issue the 'warning ticket,'" "perform a standard 'driver/vehicle check,'" and "complete the stop."  ECF No. 7, at 2.  Specifically, while the entire traffic stop "lasted for approximately [one] hour," Mr. Schifanelli contends that the additional forty-five minutes—which began when Sergeant Loveday arrived—"constituted an [u]nreasonable [s]eizure" under the Fourth Amendment.  *Id.*  Based on these facts, Mr. Schifanelli asserts a claim under 42 U.S.C. § 1983, *see id.* at 1; ECF No. 7-1, at 2, and requests $8,000 in compensatory and punitive damages for the "substantial mental distress" and "humiliation" that he experienced, ECF No. 7, at 3.

After filing his amended complaint, Mr. Schifanelli sought leave to effect service on Sergeant Loveday through alternate means.  ECF No. 8.  Sergeant Loveday, represented by OAG, filed a motion to dismiss for insufficient service of process under Rule 12(b)(5) and for failure to state a claim under Rule 12(b)(6).  ECF No. 12, at 6-12.  Because Mr. Schifanelli had detailed his

efforts to serve Sergeant Loveday, ECF No. 8, and in light of OAG's entry of appearance as Sergeant Loveday's counsel, the court held the motion to dismiss in abeyance and directed OAG to either accept service on behalf of Sergeant Loveday or detail how Mr. Schifanelli could serve him, Aug. 19, 2025 Minute Order.  After OAG provided a method by which Mr. Schifanelli could serve Sergeant Loveday, ECF No. 13, Mr. Schifanelli effected service, ECF Nos. 16, 17.  The court thereafter issued a *Fox/Neal* order in which it directed Mr. Schifanelli, who is proceeding in this matter pro se, to file a brief in opposition to Sergeant Loveday's motion to dismiss and advised him of the consequences of failing to do so.  ECF No. 18.  Mr. Schifanelli filed an opposition three days later.  ECF No. 19.  Because it appeared to the court that Mr. Schifanelli may have filed his opposition before receiving the court's *Fox/Neal* order, the court permitted him to file an amended opposition.   ECF  No. 20.   Following  Mr. Schifanelli's  amended  opposition,  ECF  No. 21, Sergeant Loveday filed a reply, ECF No. 22.  The motion is fully briefed.  ECF Nos. 12, 19, 21, 22.

## II.    LEGAL STANDARDS

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In evaluating a motion under Rule 12(b)(6), a court accepts all well-pleaded factual allegations in the complaint as true.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009).  Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice.  *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

Pleadings by pro se litigants are generally held "to less stringent standards than formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  The court therefore "liberally construe[s]" the amended complaint and all pro se filings.  *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Brown*, 789 F.3d at 151-52. This liberal construction "is not, however, a license to ignore the Federal Rules of Civil Procedure."  *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009).  Thus, "the complaint must still present a claim on which the Court can grant relief" in order to defeat a motion to dismiss under Rule 12(b)(6).  *Smith v. Scalia*, 44 F. Supp. 3d 28, 36 (D.D.C. 2014) (internal quotation marks omitted) (quoting *Budik v. Dartmouth-Hitchcock Med. Ctr.*, 937 F. Supp. 2d 5, 11 (D.D.C. 2013)).

### III.    DISCUSSION

### A.    Officer Koenigsmann

In his amended complaint, ECF No. 7, Mr. Schifanelli names Sergeant Loveday as the sole Defendant, and he separately represents that he "is seeking" to "dismiss[]" Officer Koenigsmann, ECF No. 8, at 1.  Because Mr. Schifanelli has withdrawn his claims against Officer Koenigsmann in his amended complaint, Officer Koenigsmann is no longer a party to this suit.  *See Pinson v. U.S. Dep't of Just.*, 69 F. Supp. 3d 108, 113 (D.D.C. 2014) (explaining that "once an amended complaint is filed, it supersedes the original," deprives the "first complaint . . . of any legal effect," and "mak[es] the new complaint the operative document").

5

### B.      Sergeant Loveday

#### 1.      Rule 12(b)(5)

While Sergeant Loveday originally contested service in his motion to dismiss, ECF No. 12, at 6-7, he now concedes that Mr. Schifanelli has properly effected service, ECF No. 17. Accordingly, the court denies as moot Sergeant Loveday's motion to dismiss pursuant to Rule 12(b)(5).

#### 2.      Rule 12(b)(6)

In seeking dismissal under Rule 12(b)(6), Sergeant Loveday contends that Mr. Schifanelli has not plausibly stated a claim under Section 1983 for a violation of the Fourth Amendment, ECF No. 12, at 7-10, and maintains that he is entitled to qualified immunity, *id.* at 10-12.  The court is not persuaded on either front, and it accordingly denies Sergeant Loveday's motion to dismiss.

#### a.      Fourth Amendment

Section 1983 provides a cause of action against any "person who, under color of . . . State . . . or the District of Columbia [law]" deprives an individual of the "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.  The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV.  A person is seized under the Fourth Amendment "when physical force is used to restrain [his] movement or when [he] submits to an officer's show of authority." *United States v. Gamble*, 77 F.4th 1041, 1044 (D.C. Cir. 2023) (quoting *United States v. Delaney*, 955 F.3d 1077, 1081 (D.C. Cir. 2020)). Officers conducting a traffic stop effect a "seizure of the driver [and any passengers] 'even though the purpose of the stop is limited and the resulting detention quite brief.'" *Brendlin v. California*, 551 U.S. 249, 255 (2007) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)).  "[T]he

tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission,'" which is "to address the traffic violation that warranted the stop[] and attend to related safety concerns."  *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (citations omitted) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)).  "Because addressing the infraction is the purpose of the stop, it may 'last no longer than necessary to effectuate th[at] purpose'" and must "end[] when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* (first alteration in original) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion)).

The traffic-related "mission" includes "determining whether to issue a traffic ticket," as well as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance."  *Id.* at 355. "On-scene investigation into other crimes . . . detours from that [traffic] mission," as do "safety precautions taken in order to facilitate such detours." *Id.* at 356.  "A traffic stop may be extended beyond the point of completing its [traffic] mission if an officer develops a reasonable suspicion of criminal activity."  *United States v. Blackson*, No. 25-CR-269, 2026 WL 63329, at *7 (D.D.C. Jan. 8, 2026) (quoting *United States v. Wallace*, 937 F.3d 130, 138 (2d Cir. 2019)). Reasonable suspicion requires an officer to have "a particularized and objective basis for suspecting the particular person" of a crime.  *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (quoting *Navarette v. California*, 572 U.S. 393, 396 (2014)).  That is, the "officer must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch"' of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

Sergeant Loveday asserts that Mr. Schifanelli has failed to state a claim under the Fourth Amendment because Mr. Schifanelli's "vehicle aroused suspicion of 'multiple potential

offenses,'" ECF No. 12, at 9 (quoting *Robinson v. District of Columbia*, No. 15-CV-100, 2019 WL 498741, at *4 (D.D.C. Feb. 8, 2019)),[2] meaning that "the duration of the investigation during the traffic stop . . . was not unreasonable," *id.* at 7.  As the argument goes, Sergeant Loveday's concern about the signs attached to Mr. Schifanelli's vehicle made "briefly delaying an investigation to summon the expertise of the Secret Service," which "serve[s] a 'distinctive role in promoting national security,' not unreasonable as a means of dispelling any lingering suspicion."  *Id.* at 10 (citation omitted) (quoting *Lovett v. United States*, No. 23-CV-2879, 2024 WL 4286054, at *7 (D.D.C. Sep. 25, 2024)).  Mr. Schifanelli responds that the traffic stop extended well beyond the time necessary to issue a traffic ticket for a turn-signal violation.  ECF No. 19, at 1-4; ECF No. 21, at 1-4.  He maintains that the stop was prolonged for the sole purpose of conducting an unrelated investigation into the signs on his car and that Sergeant Loveday lacked reasonable suspicion of any criminal activity, rendering his extended detention unconstitutional under *Rodriguez.*  ECF No. 19, at 1; ECF No. 21, at 1.

Mr. Schifanelli has the better argument.  Accepting his well-pleaded allegations as true and drawing all inferences in his favor, as the court must, Mr. Schifanelli has plainly stated a Section 1983 claim based on the Fourth Amendment.  That is, even if the initial traffic stop was lawful,[3] Mr. Schifanelli has sufficiently alleged that Sergeant Loveday unlawfully prolonged the

---

[2] Although Sergeant Loveday purports to quote *Sherrod v. McHugh*, 334 F. Supp. 3d 219, 245 (D.D.C. 2018), the quoted material appears in *Robinson*.  *See* ECF No. 12, at 9.

[3] Sergeant Loveday contends that Mr. Schifanelli challenges only the duration of and not the basis for the traffic stop.  *See* ECF No. 12, at 7.  But Mr. Schifanelli clearly disputes Officer Koenigsmann's reason for stopping him.  ECF No. 7, at 2 ("[T]here was no reasonable suspicion or probable cause from the initiation of the stop to its completion . . . ."); *see* ECF No. 19, at 1 (asserting that the "alleged turn signal infraction . . . did not, in actuality, occur").  Because Mr. Schifanelli has withdrawn his claims against Officer Koenigsmann, ECF No. 7; ECF No. 8, at 1, and because Sergeant Loveday does not seek dismissal of the Fourth Amendment claim to the extent that it challenges the basis for the traffic stop, the court need not resolve this dispute.

stop for a distinct investigation that had no apparent connection to the traffic violation and for which he lacked reasonable suspicion. ECF No. 12, at 9.

The sole purpose of the "traffic mission" was to address Mr. Schifanelli's failure to use a turn signal. ECF No. 7, at 1-2; *see generally* ECF Nos. 12, 22 (failing to articulate any other traffic-related infraction). Sergeant Loveday arrived on the scene of the traffic stop about twenty minutes after Officer Koenigsmann had initially detained Mr. Schifanelli. ECF No. 7, at 2. Upon arrival, Sergeant Loveday questioned Mr. Schifanelli about the signs on his vehicle, *id.*—which had no connection to the traffic mission—and then "summoned" Secret Service to the scene for further investigation, ECF No. 19, at 3. The Secret Service had no obvious reason to become involved in a traffic stop predicated on a "turn-signal infraction." ECF No. 7, at 2. And Sergeant Loveday has not suggested that the Ukraine-related signs had anything to do with Officer Koenigsmann's traffic stop, nor has he identified any traffic law that the signs violated or otherwise explained why it was necessary to enlist the Secret Service to deal with a sign-related *traffic* infraction.

To be sure, Mr. Schifanelli has not identified a precise moment during the stop when Officer Koenigsmann completed—or "reasonably should have" finished—"checking [Mr. Schifanelli's] license, determining whether there [we]re outstanding warrants against [him], . . . inspecting the automobile's registration and proof of insurance," and writing any traffic ticket. *Rodriguez*, 575 U.S. at 354-55. The permissible duration of Officer Koenigsmann's traffic mission presents a fact-bound question that turns on how quickly an officer "with reasonable diligence" could complete the specific traffic-related tasks at issue. *Blackson*, 2026 WL 63329, at *6; *see United States v. Johnson*, 166 F.4th 1116, 1119 (8th Cir. 2026) ("Officers must be 'reasonably diligent' and should act 'expeditiously' in carrying out [traffic] tasks." (quoting

9

*Rodriguez*, 575 U.S. at 357)).  It is thus entirely possible that some portion of Mr. Schifanelli's forty-five minute detention after Sergeant Loveday's arrival was still related to the traffic mission.

Mr. Schifanelli's allegations are nonetheless sufficient at the motion-to-dismiss stage to plead a prolonged detention beyond the traffic mission, either because Officer Koenigsmann had completed her traffic mission *before* Sergeant Loveday and the Secret Service concluded their investigation and allowed Mr. Schifanelli to leave—meaning the stop was prolonged for the sole purpose of a non-traffic mission—or because the sign-related interrogation, the wait for Secret Service to arrive, and the subsequent Secret Service investigation caused Officer Koenigsmann to complete the traffic stop long after it should have concluded had she worked expeditiously.  As Mr. Schifanelli has described the traffic stop, there is nothing to suggest that a reasonably diligent officer would take "approximately [one] hour (or even substantially longer)" to complete a simple traffic mission with seemingly no issues related to his license, registration, or any warrants.  ECF No. 7, at 2.  That is enough to survive a motion to dismiss.  *See Cape v. San Jose Police Dep't*, No. 25-CV-740, 2025 WL 2197143, at *5-7 (N.D. Cal. Aug. 1, 2025) (liberally construing a pro se plaintiff's allegations of a prolonged detention and, in light of the "fact-specific inquiry," denying a motion to dismiss a Section 1983 claim).  Indeed, courts have found shorter detentions to violate the Fourth Amendment under *Rodriguez*.  *See, e.g.*, *Johnson*, 166 F.4th at 1117, 1119 (reversing the trial court's denial of a motion to suppress based on *Rodriguez* in a case with an officer who "normally" needed "five or six minutes to complete and explain a traffic ticket" and would have completed the traffic mission in approximately twenty minutes but prolonged the stop by two extra minutes for a canine team to arrive); *United States v. Clark*, 902 F.3d 404, 406, 410-11 (3d Cir. 2018) (affirming the suppression of evidence and concluding that an officer impermissibly extended a twenty-three minute traffic stop to ask about the driver's criminal history rather than

10

complete the traffic mission); *see also Blackson*, 2026 WL 63329, at \*3, \*5 (concluding that MPD officers prolonged a twenty-seven-minute traffic stop when one officer took twenty-two minutes to write four traffic tickets after completing database checks while other officers on scene did not help and instead waited for a canine patrol officer to arrive).

As to any reasonable suspicion, Sergeant Loveday does not assert that he or the Secret Service had an articulable basis to think that Mr. Schifanelli had committed a crime. Sergeant Loveday concedes that the non-traffic investigation targeted the signs attached to Mr. Schifanelli's car, *see* ECF No. 12, at 9-10; ECF No. 22, at 2-3, but he has not identified a crime that Mr. Schifanelli plausibly committed by displaying materials about the war in Ukraine, *cf. Estep v. Dallas County*, 310 F.3d 353, 358 (5th Cir. 2002) (per curiam) (holding that a National Rifle Association sticker on a vehicle did not create reasonable suspicion that a driver was dangerous and "might gain immediate control of a weapon"). In Sergeant Loveday's telling, "the signage on [Mr. Schifanelli's] vehicle aroused suspicions of 'multiple potential offenses and investigations [that could be] at issue.'" ECF No. 12 at 9 (second alteration in original) (quoting *Robinson*, 2019 WL 498741, at \*4). But the court is left to speculate what those offenses were and what reasonable, articulable facts tied Mr. Schifanelli to them. For that reason, the cases on which Sergeant Loveday relies are inapposite because, in each, officers had reasonable suspicion of criminal activity. *See United States v. Sharpe*, 470 U.S. 675, 682-88 (1985) (holding that a stop's duration did not violate the Fourth Amendment in a case involving clear suspicion of marijuana trafficking and "delay . . . attributable . . . to the [suspect's] evasive actions"); *Robinson*, 2019 WL 498741, at \*1-4, \*6 (finding an extended detention lawful when officers observed a suspect trespassing, the suspect admitted to having a gun but was later identified as an off-duty MPD officer, and it took an hour to confirm the suspect's employment); *James v. United*

11

*States*, 48 F. Supp. 3d 58, 66 (D.D.C. 2014) (finding no plausible Fourth Amendment claim based on allegations of a "brief detention in handcuffs" while officers "investigated . . . [a] crying woman's injury, her allegations against [the plaintiff], and her need for medical treatment"); *see also* ECF No. 12, at 8-10.  On the facts alleged, the court cannot even conclude Sergeant Loveday had a *hunch* that Mr. Schifanelli was engaged in criminal activity.

Nor is the court persuaded by Sergeant Loveday's reliance on "national security concerns" that supposedly warranted a Secret Service investigation to "dispel[] any lingering suspicion." ECF No. 12, at 9-10.  The argument is circular because it assumes suspicion existed when Sergeant Loveday has not articulated any suspicion in the first instance or explained why the signs' content implicated the United States' national security.  *See* ECF No. 19, at 2 (describing the signs as expressing the view that the United States' expansion of NATO provoked Russia to invade Ukraine in self-defense).  The Fourth Amendment requires reasonable suspicion of a *crime* and provides no get-out-of-reasonable-suspicion-free card for those vaguely invoking heightened national security risks.

Sergeant Loveday's final argument about reasonable suspicion evinces a clear misunderstanding of the Fourth Amendment.  Sergeant Loveday maintains that the "dispositive issue in this case" is not "whether [his] suspicions *themselves* were *reasonable*, but instead whether the *duration* of the investigation was reasonable" in "light of . . . whatever [his suspicions] may have been."  ECF No. 22, at 3-4.  In other words, Sergeant Loveday views the "content of the messaging" on the signs that he and the Secret Service were investigating as "irrelevant."  *Id.* at 4. This logic cannot be squared with *Rodriguez*: the entire reason a prolonged traffic stop violates the Fourth Amendment is because officers persist in investigating criminal activity—either instead of or well after completing any traffic mission—without reasonable suspicion of criminal activity.

12

*See* 575 U.S. at 354.   The central question is thus what suspicion Sergeant Loveday had and whether he satisfied the Fourth Amendment's demand for articulable suspicion of a crime before further restraining Mr. Schifanelli's liberty.   And there is no way to assess that question unless Sergeant Loveday identifies the "multiple potential offenses" he believed that the Secret Service needed to investigate.   ECF No. 12, at 8 (quoting *Robinson*, 2019 WL 498741, at \*4).   At bottom, Mr. Schifanelli has stated a claim under Section 1983 based on a Fourth Amendment violation.

### b.    Qualified immunity

"Government officials enjoy qualified immunity from suit under [Section] 1983 unless their conduct violates clearly established law."   *Zorn v. Linton*, No. 25-297, 2026 WL 795469, at \*2 (U.S. Mar. 23, 2026) (per curiam).   Applying that proposition involves two questions: "(1) whether the facts in the record show the officers' conduct violated a constitutional right, and if so, (2) whether the constitutional right was clearly established at the time of the incident." *Corrigan v. District of Columbia*, 841 F.3d 1022, 1029 (D.C. Cir. 2016).   As the court has explained, Mr. Schifanelli has plausibly alleged a Fourth Amendment violation, *see supra* Section III.B.2.a, which satisfies the first prong of the qualified-immunity analysis, so the court need only address whether the right was clearly established.

"A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right."   *Zorn*, 2026 WL 795469, at \*2 (internal quotation marks omitted) (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam)).   "[E]arlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established," *Hope v. Pelzer*, 536 U.S. 730, 741 (2002), but there need not be a ""case directly on point,"" *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)).   Rather,

"existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 577 U.S. at 12 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  This requires "controlling authority" or "a robust consensus of cases of persuasive authority."  *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal quotation marks omitted) (quoting *al-Kidd*, 563 U.S. at 741-42).  And, the Supreme Court has repeatedly cautioned that courts should not define "clearly established law" at "a high level of generality."  *Pauly*, 580 U.S. at 79 (quoting *al-Kidd*, 563 U.S. at 742); *see, e.g.*, *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014); *al-Kidd*, 563 U.S. at 742 (collecting cases).

Sergeant Loveday asserts that he is entitled to qualified immunity even if he violated Mr. Schifanelli's Fourth Amendment rights because it was not clearly established that he was prohibited from extending a traffic stop to question Mr. Schifanelli about signs attached to his vehicle and then waiting on Secret Service to arrive and "conduct an additional investigation." ECF No. 12, at 11-12; *see* ECF No. 22, at 4-6.  Mr. Schifanelli points to *Rodriguez*, which he argues clearly established the proposition that police officers cannot "exten[d]" a traffic stop "[a]bsent reasonable suspicion" of a crime.  ECF No. 19, at 1, 5 (quoting *Rodriguez*, 575 U.S. at 353); *see* ECF No. 21, at 1, 4-5 (same).  At this early stage in the litigation and based on the parties' arguments, the court concludes that Sergeant Loveday is not entitled to qualified immunity.

To begin, Sergeant Loveday incorrectly suggests that the only clearly established law Mr. Schifanelli has identified is the general right to be free from unreasonable seizures.  ECF No. 22, at 4-5.  That misunderstands Mr. Schifanelli's argument.  Had he only referred to the Fourth Amendment's text, Mr. Schifanelli would have defined the right at too high a level of generality.  *See Mullenix*, 577 U.S. at 12.  But Mr. Schifanelli cites *Rodriguez* and asserts that

14

Sergeant Loveday unlawfully extended the traffic stop.  ECF No. 19, at 1, 5; ECF No. 21, at 1, 4-5.  In his reply, Sergeant Loveday does not acknowledge *Rodriguez*, let alone contest Mr. Schifanelli's claim that *Rodriguez* created clearly established law.  *See generally* ECF No. 22.  While Mr. Schifanelli has the burden of showing that the "particular right in question . . . was clearly established," *Dukore v. District of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015), it is "well-settled that 'where a party fails to respond to arguments in opposition papers, the Court may treat those specific arguments as conceded,'" *Campaign Legal Ctr. v. Fed. Election Comm'n*, 520 F. Supp. 3d 38, 50 (D.D.C. 2021) (quoting *Dinkel v. MedStar Health, Inc.*, 800 F. Supp. 2d 49, 58 (D.D.C. 2012)).  The court considers the argument to be conceded because Sergeant Loveday should have responded to the legal issue at the core of his qualified-immunity defense.  Yet even if the court construed Sergeant Loveday's motion and reply as contesting whether *Rodriguez* clearly established that the Fourth Amendment prohibits an extension of a traffic stop without reasonable suspicion of any criminal activity, the court would reject the argument on the merits.  The court is mindful that the particular law must be "sufficiently clear" so that any officer "would have understood that what he [wa]s doing violates [the Fourth Amendment]."  *Zorn*, 2026 WL 795469, at *2 (quoting *Rivas-Villegas*, 595 U.S. at 5).  *Rodriguez* clears that high bar.

In *Rodriguez*, a police officer observed a vehicle veer onto the shoulder of a highway.  575 U.S. at 351.  Because state law prohibited driving on highway shoulders, the officer—who was part of a K-9 unit and had his dog in the patrol car—conducted a traffic stop.  *Id.*  The officer asked the driver, Mr. Rodriguez, for his license, registration, and proof of insurance and requested that Mr. Rodriguez "accompany him [back] to the patrol car."  *Id.*  After Mr. Rodriguez declined to leave his own vehicle, the officer conducted a records check and returned to Mr. Rodriguez's car to question Mr. Rodriguez and the passenger about "where [they] were coming from and where

15

they were going." *Id.* The officer then conducted a records check on the passenger "and called for a second officer" before "writing a warning ticket for [Mr.] Rodriguez" for the traffic violation. *Id.* Once the officer finished writing the ticket and returned the occupants' documents, he asked for permission to "walk his dog around [Mr.] Rodriguez's vehicle." *Id.* at 352. After Mr. Rodriguez refused to provide consent, the officer ordered him and the passenger out of the car and waited for backup to arrive. *Id.* Another officer arrived five minutes later, the primary officer then had his dog conduct an open-air sniff of Mr. Rodriguez's car, and the dog alerted to the presence of narcotics. *Id.* Upon conducting a search, the officers recovered methamphetamine. *Id.*

The Supreme Court held that the "dog sniff" was "aimed at 'detect[ing] evidence of ordinary criminal wrongdoing'" unrelated to the traffic mission behind the stop. *Id.* at 355 (alteration in original) (quoting *City of Indianapolis v. Edmond*, 531 U.S. 32, 41 (2000)); *see id.* at 356 ("Lacking the same close connection to roadway safety as the ordinary [traffic] inquiries, a dog sniff is not fairly characterized as part of the officer's traffic mission."). The Court explained that a "general interest in criminal enforcement" that leads to "[o]n-scene investigation into other crimes" and "*adds time to*" the traffic stop is constitutionally permissible *only* if the officer has "reasonable suspicion of criminal activity [that] justifie[s]" continued detention. *Id.* at 356-58 (emphasis added).

For qualified-immunity purposes, *Rodriguez* clearly establishes that the Fourth Amendment prohibits law enforcement from "prolong[ing]—*i.e.*, add[ing] time to—the [traffic] stop" for the sole purpose of conducting a criminal investigation unrelated to the traffic mission *unless* that investigation is supported by reasonable, articulable suspicion of criminal activity. *Id.* at 357 (internal quotation marks omitted); *see McLeod v. Mickle*, 765 F. App'x 582,

16

585 n.2 (2d Cir. 2019) (summary order) ("*Rodriguez* was decided in April 2015, clearly establishing such a right well before [the officer] stopped [the plaintiff] in June 2016."); *see also Houston v. Reeves*, No. 24-7268, 2026 WL 674346, at *3 (9th Cir. Mar. 10, 2026) (per curiam) (affirming the denial of qualified immunity at summary judgment and citing *Rodriguez* and Circuit precedent to explain that the "unreasonable prolonging of [the plaintiff's] detention" was clearly established); *Jarvis v. City of Daytona Beach*, No. 24-13456, 2026 WL 323259, at *7-8 (11th Cir. Feb. 6, 2026) (per curiam) (same); *Kummer v. Embley*, No. 25-CV-548, 2026 WL 472733, at *7 (D. Utah Feb. 19, 2026) (holding that Tenth Circuit precedent applying *Rodriguez* was clearly established); *Parada v. Anoka County*, 332 F. Supp. 3d 1229, 1241 (D. Minn. 2018) ("*Caballes* and *Rodriguez* clearly establish that a seizure cannot extend beyond the time necessary to issue a traffic ticket.").

This formulation of *Rodriguez*'s holding for the qualified-immunity analysis is appropriate because it balances two competing issues: on one hand, it is "'particularized' [enough] . . . so that the 'contours' of the right are clear to a reasonable official," *Reichle v. Howards*, 566 U.S. 658, 665 (2012) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); on the other, it is consistent with the fact that "'it is error to demand [the] specificity' of a factual twin," *Soukaneh v. Andrzejewski*, 112 F.4th 107, 123 (2d Cir. 2024) (alteration in original) (quoting *Collymore v. Krystal Myers, RN*, 74 F.4th 22, 30 (2d Cir. 2023)); *see Hicks v. Ferreyra*, 64 F.4th 156, 171 (4th Cir. 2023) ("The 'key inquiry' is not whether a court has 'considered *identical* factual circumstances and held that an officer's conduct violated particular constitutional rights,' but whether officers . . . have been provided fair warning, with sufficient specificity, that their actions would qualify as a deprivation of an individual's rights." (quoting *Betton v. Belue*, 942 F.3d 184, 193-94 (4th Cir. 2019))); *see also Cruise-Gulyas v. Minard*, 918 F.3d 494, 497 (6th Cir. 2019)

17

("While [*Rodriguez* and a prior Sixth Circuit case] are not factually identical [to this one], they establish clear, specific principles that answer the questions this case asks.").

Although *Rodriguez* involved a drug-sniffing dog, the Court's holding unmistakably applies whenever officers, lacking reasonable suspicion of any crime, extend a traffic stop for an unrelated and unwarranted criminal investigation. *Cf. Dukore*, 799 F.3d at 1144 (explaining that "the right . . . is 'not the general right to be free from retaliation for one's speech,' but rather 'the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause'" (quoting *Reichle*, 566 U.S. at 665)). Other courts have likewise concluded that *Rodriguez* is clearly established for the same principle that this court applies today. *See Houston*, 2026 WL 674346, at *1-3 (affirming the denial of qualified immunity in a case that did not involve a drug-sniffing dog based in part on *Rodriguez*); *Jarvis*, 2026 WL 323259, at *7-8 (same); *Bellows v. Grand Isle Cnty. Sheriff's Dep't*, No. 25-CV-390, 2026 WL 370862, at *10-11 (D. Vt. Feb. 10, 2026) (citing Circuit precedent that *Rodriguez* is clearly established law and denying a motion to dismiss on the basis of qualified immunity in a case that did not involve a drug-sniffing dog or a search of a car); *Cain v. City of Yucaipa*, No. 24-CV-1682, 2025 WL 2019999, at *7-8 (C.D. Cal. June 9, 2025) (denying a motion for summary judgment on the basis of qualified immunity in a case that did not involve a drug-sniffing dog because *Rodriguez* is clearly established law). Aside from the *Rodriguez* officer's use of a drug-sniffing dog, this case parallels *Rodriguez* in every relevant way. There, as here, an officer conducted a traffic stop for a discrete traffic violation. *Rodriguez*, 575 U.S. at 351; ECF No. 7, at 1. There, as here, the officer conducting the initial stop added time by summoning backup for non-traffic purposes. *Rodriguez*, 575 U.S. at 351-52; ECF No. 19, at 3; ECF No. 22, at 2. And there, as here, the purpose of the extension was for an unrelated investigation into activity that bore no connection to the traffic violation or the

18

safety-related mission of the traffic stop. *Rodriguez*, 575 U.S. at 352, 355-57; *see supra* Section III.B.2.a; ECF No. 7, at 2; ECF No. 19, at 2-3.

Mr. Schifanelli has plausibly alleged that Sergeant Loveday lacked any reasonable, articulable suspicion of criminal activity and that Sergeant Loveday violated the Fourth Amendment by requesting Secret Service to respond and investigate signs about the war in Ukraine. And because any reasonable officer would have known by April 2022 that *Rodriguez* prohibited him from prolonging a traffic stop for this unrelated investigation, Sergeant Loveday is not entitled to qualified immunity at this time.[4]

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Sergeant Loveday's Motion to Dismiss, ECF No. 12, **DENIED**, and Sergeant Loveday shall file an answer to Mr. Schifanelli's amended complaint, ECF No. 7, on or before April 14, 2026. Fed. R. Civ. P. 12(a)(4)(A).

_____

LOREN L. ALIKHAN
United States District Judge

Date:   March 31, 2026

---

[4] The court "note[s] that although [Mr. Schifanelli's] complaint adequately alleged a violation of clearly established law, development of the factual record through discovery may bring to light new information that could affect the qualified immunity analysis." *Meshal v. Comm'r, Ga. Dep't of Pub. Safety*, 117 F.4th 1273, 1288 n.6 (11th Cir. 2024). Accordingly, "[Sergeant Loveday is] free to reassert qualified immunity on a motion for summary judgment and at trial, if there is one." *Id.* (collecting cases).